IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

NATHANIEL KEITH CRAPE,

      Petitioner,                   No. CIV S-04-1004 GEB GGH P

    vs.

TERESA A. SCHWARTZ,

      Respondent.           FINDINGS AND RECOMMENDATIONS

_____/

I.  Introduction

      Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.  Petitioner challenges his 2002 San Joaquin County Superior Court conviction for arson of a structure (Cal. Penal Code § 451(c)) and for unlawfully causing a fire that caused an inhabited structure to burn (Cal. Penal Code § 452 (b)).  Petitioner was sentenced to six years for the § 451(c) conviction and to a concurrent three year term on the § 452(b) conviction.

      Petitioner challenges his conviction on one ground: instructing the jury pursuant to CALJIC No. 17.41.1 violated petitioner's federal constitutional right to a unanimous jury verdict.

\\\\\

1

1   II.  <u>Anti-Terrorism and Effective Death Penalty Act (AEDPA)</u>

2         The Antiterrorism and Effective Death Penalty Act (AEDPA) applies to this

3 petition for habeas corpus which was filed after the AEDPA became effective.  <u>Neelley v. Nagle</u>,

4 138 F.3d 917 (11th Cir.), citing <u>Lindh v. Murphy</u>, 521 U.S. 320, 117 S. Ct. 2059 (1997).  The

5 AEDPA "worked substantial changes to the law of habeas corpus," establishing more deferential

6 standards of review to be used by a federal habeas court in assessing a state court's adjudication

7 of a criminal defendant's claims of constitutional error.  <u>Moore v. Calderon</u>, 108 F.3d 261, 263

8 (9th Cir. 1997).

9         In <u>Williams (Terry) v. Taylor</u>, 529 U.S. 362, 120 S. Ct. 1495 (2000), the Supreme

10 Court defined the operative review standard set forth in § 2254(d).  Justice O'Connor's opinion

11 for Section II of the opinion constitutes the majority opinion of the court.  There is a dichotomy

12 between "contrary to" clearly established law as enunciated by the Supreme Court, and an

13 "unreasonable application of" that law.  <u>Id</u>. at 1519.  "Contrary to" clearly established law applies

14 to two situations:  (1) where the state court legal conclusion is opposite that of the Supreme

15 Court on a point of law, or (2) if the state court case is materially indistinguishable from a

16 Supreme Court case, i.e., on point factually, yet the legal result is opposite.

17         "Unreasonable application" of established law, on the other hand, applies to

18 mixed questions of law and fact, that is, the application of law to fact where there are no factually

19 on point Supreme Court cases which mandate the result for the precise factual scenario at issue.

20 <u>Williams (Terry)</u>, 529 U.S. at 407-08, 120 S. Ct. at 1520-1521 (2000).  It is this prong of the

21 AEDPA standard of review which directs deference to be paid to state court decisions.  While the

22 deference is not blindly automatic, "the most important point is that an *unreasonable* application

23 of federal law is different from an incorrect application of law....[A] federal habeas court may not

24 issue the writ simply because that court concludes in its independent judgment that the relevant

25 state-court decision applied clearly established federal law erroneously or incorrectly.  Rather,

26 that application must also be unreasonable."  <u>Williams (Terry)</u>, 529 U.S. at 410-11, 120 S. Ct. at

1  1522 (emphasis in original).  The habeas corpus petitioner bears the burden of demonstrating the

2  objectively unreasonable nature of the state court decision in light of controlling Supreme Court

3  authority.  Woodford v. Viscotti, 537 U.S. 19, 123 S. Ct. 357 (2002).

4          The state courts need not have cited to federal authority, or even have indicated

5  awareness of federal authority in arriving at their decision.  Early v. Packer, 537 U.S. 3, 123 S.

6  Ct. 362 (2002).  Nevertheless, the state decision cannot be rejected unless the decision itself is

7  contrary to, or an unreasonable application of, established Supreme Court authority.  Id.  An

8  unreasonable error is one in excess of even a reviewing court's perception that "clear error" has

9  occurred.  Lockyer v. Andrade, 538 U.S. 63, 75-76, 123 S. Ct. 1166, 1175 (2003).  Moreover, the

10  established Supreme Court authority reviewed must be a pronouncement on constitutional

11  principles, or other controlling federal law, as opposed to a pronouncement of statutes or rules

12  binding only on federal courts.  Early v. Packer, 537 U.S. at 9, 123 S. Ct. at 366.

13          However, where the state courts have not addressed the constitutional issue in

14  dispute in any reasoned opinion, the federal court will independently review the record in

15  adjudication of that issue.  "Independent review of the record is not de novo review of the

16  constitutional issue, but rather, the only method by which we can determine whether a silent state

17  court decision is objectively unreasonable."  Himes v. Thompson, 336 F.3d 848, 853 (9th Cir.

18  2003).

19  III. Discussion

20          Because the underlying facts of the case, beyond the fact of the conviction itself as

21  stated above, are not at issue, and by petitioner's own concession,[1] are not directly relevant to the

22  legal challenge raised by petitioner, the court will proceed to consideration of the issue raised.

23          Petitioner contends that the trial court erred in instructing the jury pursuant to

24  CALJIC No. 17.41.1 because that instruction impinged upon petitioner's Sixth and Fourteenth

25

26          [1]  See Exhibit (Exh.) 2 to Petition, p. 3.

1  Amendment rights to a jury trial, to a unanimous jury and to have the jury free to use its power of

2  nullification.  Petition, Exh. 2, p. 6.

3          The challenged instruction in this case is CALJIC 17.41.1:

4          The integrity of a trial requires that jurors, at all times during their
           deliberations, conduct themselves as required by these instructions.

5          Accordingly, should it occur that any juror refuses to deliberate or
           expresses an intention to disregard the law or decide the case based

6          on [penalty or punishment, or] any [other] improper basis, it is the
           obligation of the other jurors to immediately advise the Court of

7          the situation.

8  CT[2] 227; RT[3] 439,[4] 498-99.

9          Petitioner argues that in <u>People v. Engelman</u>, 28 Cal.4th 436 (2002), the state

10  supreme court advised trial courts not give CALJIC 17.41.1, but made its ruling prospective.

11  The state's high court, petitioner contends, erred in not ruling the instruction in violation of

12  petitioner's constitutional rights.  <u>Id</u>.[5]

13          The state court of appeals, in finding petitioner's argument (as

14  defendant/appellant) frivolous, responded as follows:

15          Defendant argues it was error to give CALJIC No. 17.41.1.  The
           claim is totally meritless in light of *People v. Engelman* (2002) 28

16          Cal.4th 436, decided by the California Supreme Court three
           months before defendant filed his opening brief here.

17

---

18          [2] Clerk's Transcript.

19          [3] Reporter's Transcript.

20          [4] The undersigned notes that during the trial judge's colloquy with the prosecutor and
    defense counsel concerning applicable jury instructions, ironically, while the trial judge expresses

21  some reluctance to give CALJIC 17.41.1, defense counsel remains silent, raising no objection.
    As the prosecutor supported the giving of the instruction, it was therefore included:

22          "The Court [in relevant part]: '17.41.1, does counsel really want it?  It takes poor DCA
           three pages to explain why this is okay to give, but - -"

23          Mr. Baysinger [prosecutor]: Yes.
           The Court: But, you know, it's always an appeal.

24          Mr. Baysinger: I like it though.
           The Court: You like it.  Okay.  I'll give it.'"  CT 439.

25

26          [5] Petitioner pro se incorporates and relies only on his opening brief before the state
    supreme court in his federal court petition.

1   Defendant tries to evade *Engelman* by asserting "the California
    Supreme Court did not deal with the federal constitutional issues
2   but rather relied upon the California Constitution" and that "federal
    constitutional issues still exist and are not resolved by the
3   *Engelman* decision."  He also argues: "In *Engelman, supra*, 28
    Cal.4th at p. 441, the court flatly stated that 'the jury lacks the right
4   to engage in nullification' but did not analyze the consequences or
    discuss differing views or those of federal cases.  Thus, California
5   case law does not directly contradict Mr. Crape's position on this
    issue."
6
    Defendant is wrong.  The first sentence of the second paragraph of
7   *Engelman* states:  "We agree with the Court of Appeal that the
    instruction does not infringe upon defendant's *federal* or state
8   constitutional right to trial by jury or his state constitutional right to
    a unanimous verdict, . . ." (*Engelman*, *supra*, 28 Cal.4th at pp. 439-
9   440, italics added.)

10  To the extent defendant might counter that *Engelman* did not
    address the *federal* constitutional right to a *unanimous* verdict, that
11  is no doubt because no such federal right exists.  (*Johnson v.
    Louisiana* (1972) 406 U.S. 356 [32 L.Ed.2d 152] [vote of 9 of 12
12  jurors is sufficient for guilty or not guilty verdict]; *Apodaca v.
    Oregon* (1972) 406 U.S. 404 [32 L.Ed.2d 184] [votes of 11 to 1
13  and 10 to 2 suffice]; *People v. Vargas* (2001) 91 Cal.App.4th 506,
    562 ["There being no right to a unanimous verdict under the
14  United States Constitution, the question of whether defendant was
    entitled to a unanimity instruction is a state, not a federal, issue"].)
15
    The fact that the *Engelman* majority opinion cited only one federal
16  court decision does not establish that it failed to decide issues
    arising under the United States Constitution.  (*Engelman, supra*, 28
17  Cal.4th at pp. 442-443, citing *U.S. v. Thomas* (2d Cir.1997) 116
    F.3d 606.) The *Engelman* court was presented with claims that
18  CALJIC No. 17.41.1 impaired the "right to a jury trial guaranteed
    by the federal and California Constitutions [] ([s]ee U.S. Const.,
19  6th & 14th Amends.; Cal. Const., art. I, § 16[])" and the "federal
    constitutional right to due process of law . . . ." (*Engelman, supra*,
20  at p. 442.)

21  *Engelman* resolved the federal questions in an analysis that relied
    primarily on its decisions in *People v. Cleveland* (2001) 25 Cal.4th
22  466, and *People v. Williams* (2001) 25 Cal.4th 441, two cases
    involving jury nullification.  (*Engelman, supra*, 28 Cal.4th at pp.
23  441-446.)  *Cleveland* and *Williams* featured detailed analyses of
    federal case law regarding federal constitutional issues.  (*People v.
24  Cleveland, supra*, at pp. 480-484 [noting that federal district court
    and circuit court decisions not binding on California Supreme
25  Court, even on federal questions, but "we consider them carefully
    for the guidance they provide"]; *People v. Williams, supra*, at pp.
26  449-456, 459-460.)  Several federal cases discussed by *Cleveland*

1   and *Williams* are among those defendant relies on here.

2   Thus, even though the *Engelman* majority opinion cited only one
    federal court decision, it implicitly and necessarily incorporated a
3   far-ranging federal constitutional analysis by reference to
    *Cleveland* and *Williams* – not to mention the fact that *Engelman*
4   expressed that it was decided on both state and federal grounds.
    Defendant misrepresents the import of *Engelman* by asserting it
5   did not decide the federal constitutional claims at issue there.

6   Defendant's appeal is frivolous. "[I]t indisputably has no merit –
    [since] any reasonable attorney would agree that the appeal is
7   totally and completely without merit." (*In re Marriage of Flaherty*
    (1982) 31 Cal.3d 637, 650.) [footnote 1]

8
        [Footnote 1]If defendant challenged CALJIC No.
9       17.41.1 solely to preserve the issue for possible
        federal review, then he should have acknowledged
10      that *Engelman* reached the federal questions, noted
        that this court could not rule in defendant's favor
11      because it is bound by the California Supreme Court
        decision (*Auto Equity Sales, Inc. v. Superior Court*
12      (1962) 57 Cal.2d 450), and expressed his reason for
        raising the issue.  We would not have found the
13      appeal frivolous had he done so.

14      The judgment is affirmed.

15  Petitioner's Exh. 3, pp. 2-5 ; Respondent's (Resp.) Exh. C, Unpub. Opinion of the Third District

16  Court of Appeal, pp. 2-5.

17      The California Supreme Court denied petitioner's petition for review without

18  comment.  Resp. Exh. F.

19      A decision by the Ninth Circuit disposes of the precise issue raised by petitioner.

20  Brewer v. Hall, 378 F.3d 952 (9th Cir. 2004).[6]  The Ninth Circuit – whose decisions, of course,

21  are binding authority upon this court – has held that the state court determination that a

22  petitioner's constitutional rights were not violated by use of the California pattern instruction

23  regarding jury nullification was neither contrary to, nor an unreasonable application of, clearly

24  _____

25      [6] Brewer, supra, was decided on August 4, 2004.  Respondent actually filed the Answer in
    the instant case, to which petitioner did not file a Reply (Traverse), on the same day (see docket
26  entry no. 5).  Because respondent did not have the benefit of this decision prior to filing the
    Answer, no reference is made to this case.

1  established federal law.  While expressing no independent view as to the constitutional merits of

2  CALJIC 17.41.1, the federal appellate court explicitly observed that there is no decision by the

3  United States Supreme Court establishing "that an instruction such as CALJIC 17.41.1 violates

4  an existing constitutional right."  Brewer, supra, at 956.

> Indeed, related statements of the Court have emphasized that the
> right to a representative jury [does not include] the right to be tried
> by jurors who have explicitly indicated an inability to follow the
> law and instructions of the trial judge." *Lockett v. Ohio,* 438 U.S.
> 586, 596-97, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978); *see also Sparf*
> *v. United States*, 156 U.S. 51, 72-73, 15 S.Ct. 273, 39 L.Ed. 343
> (1895) (stating that jurors are bound to follow the law as stated by
> the trial court). Nor has the Supreme Court found a constitutional
> violation in removing jurors who are unwilling or unable to follow
> the trial court's instructions. *Cf. Morgan v. Illinois,* 504 U.S. 719,
> 730, 112 S.Ct. 2222, 119 L.Ed. 492 (1992) (discussing purposes of
> the voir dire process).

12  Id.

13          Moreover, the decision in Brewer was rendered adversely to petitioner therein in

14  circumstances far more arguably colorable than any presented by petitioner in the instant case.

15  Even though the trial court had given the CALJIC 17.41 instruction repeatedly with the express

16  knowledge that the jury was deadlocked and that there was at least one juror who may have been

17  improperly considering the penalty, the Ninth Circuit did not find it constitutionally improper as

18  applied even if the instruction was not found to be facially unconstitutional because no Supreme

19  Court precedent created clearly established law in support of such a claim.  Brewer, supra, at 956.

20  As respondent contends, here the record does not even show any adverse effect upon

21  deliberations, nor did the jury communicate any difficulties in the deliberative process.  Answer,

22  p. 11, citing RT 504-517, 529-531.  The jury in the instant case requested supplies (CT 164),

23  asked for written instructions (CT 165[7]) and a read-back of certain testimony, and sought

24  clarification of the charges (CT 166), then notified the court that a verdict had been reached (CT

25  _____

26          [7] Specifically, the jury requested "judge's/jury instructions with all the counts written out
and description."  CT 165.

1    167).  Id.

2             The Brewer Court, finding that no Supreme Court authority has held that an

3    antinullification instruction violates due process, also found unpersuasive petitioner's reliance on

4    Estelle v. McGuire, 502 U.S. 62, 112, S. Ct. 475 (1991), "which stands for the broad proposition

5    that an erroneous jury instruction can rise to the level of unconstitutional error if it 'so infected

6    the entire  trial that the resulting conviction violates due process.'" Id.  (quoting Cupp v.

7    Naughten, 414 U.S. 141, 147, 94 S. Ct. 396 (1973).

8             Similarly misplaced was petitioner's reliance upon United States v. Symington,

9    195 F.3d 1080, 1087 (9th Cir. 1999), which found impermissible dismissal of a juror where

10   "there is 'any reasonable possibility that the impetus for a juror's dismissal stems from the juror's

11   views on the merits of the case.'"  Brewer, supra, at 957.   Petitioner's reliance thereon was

12   inapposite both because the analysis in Symington was based on a Federal Rule of Criminal

13   Procedure (Rule 23(b)), not upon the federal constitution, and because it is not a Supreme Court

14   case. Id.

15            Finally, just as the state appellate court did herein, the Ninth Circuit noted that in

16   Engelman, supra, the California Supreme Court only discontinued future use of CALJIC 17.41.1

17   based solely on its supervisory capacity over lower state courts and not because the instruction

18   violated any established federal constitutional right.  Id.  The Brewer Court, in fact, explicitly

19   found that the state supreme court decision in Engelman "comports with our own assessment of

20   Supreme Court precedent."

21            Therefore, this court finds that the denial of petitioner's sole claim by the

22   California Supreme Court was not an unreasonable application of clearly established Supreme

23   Court authority and the petition should be denied.

24            Accordingly, IT IS HEREBY RECOMMENDED that petitioner's application for

25   a writ of habeas corpus be denied.

26   \\\\\

1    These findings and recommendations are submitted to the United States District

2  Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty

3  days after being served with these findings and recommendations, any party may file written

4  objections with the court and serve a copy on all parties.  Such a document should be captioned

5  "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

6  shall be served and filed within ten days after service of the objections.  The parties are advised

7  that failure to file objections within the specified time may waive the right to appeal the District

8  Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

9  DATED:  8/1/06

/s/ Gregory G. Hollows

10

_____

11                                          GREGORY G. HOLLOWS
                                            UNITED STATES MAGISTRATE JUDGE

12

13

GGH:009
14  crap1004.fr

15

16

17

18

19

20

21

22

23

24

25

26